CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED *[handwritten]* Dville
JUN 26 2008
JOHN F. CORCORAN, CLERK
BY: *[signature]*
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| LEONA M. MARTIN, | ) | CASE NO. 4:07CV00024 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | By: B. Waugh Crigler |
| of Social Security, | ) | U. S. Magistrate Judge |
| | ) | |
| Defendant. | ) | |

This challenge to a final decision of the Commissioner which denied plaintiff's April 8, 2004 applications for disability, disability insurance benefits, and supplemental security income ("SSI") under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423 and 1381 et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision eventually adopted as a final decision of the Commissioner, an Administrative Law Judge (Law Judge) found that plaintiff had an alleged disability onset date of January 5, 2001, had not engaged in substantial gainful activity during the relevant time period, and was insured for benefits through March 31, 2006. (R. 12, 14.) The Law Judge further found that she had the following severe impairments: degenerative disc disease of the sacrolumbar

spine, a history of intermittently recurring depression, and a history of Crohn's disease.[1] (R. 14.) The Law Judge determined that her impairments, viewed individually or in combination, were not severe enough to meet or equal any listed impairment. (R. 18.) The Law Judge was of the view that although plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, her statements concerning the intensity, duration, and limiting effects of these symptoms were not entirely credible. (R. 20.) The Law Judge opined that plaintiff, a younger individual[2], retained the residual functional capacity ("RFC") to perform sedentary work which involves only occasional postural activities, including climbing, balancing, stooping, kneeling, crouching and crawling. (R. 18.) The Law Judge concluded that this RFC precluded her from performing her past relevant work as a spray operator and utility worker in furniture factories. (R. 21.) However, the Law Judge determined that other jobs which exist in significant numbers in the national economy were available to plaintiff[3]. (R. 22.) Thus, the Law Judge ultimately found she was not disabled under the Act.

Plaintiff appealed the Law Judge's May 24, 2006 decision to the Appeals Council, which found no basis in the record or in the reasons advanced on appeal to review the decision. (R. 5-7.) Accordingly, the Appeals Council denied review and adopted the Law Judge's decision as

---

[1] The Law Judge determined that plaintiff's mental impairment of dysthymia, or major depression, was not severe. (R. 18.)

[2] At her hearing before the Law Judge, plaintiff testified that she was thirty-four years old, and the Law Judge found that she was a younger person. (R. 21, 341.) Under the Regulations, an individual less that fifty years old is a "younger person." 20 C.F.R. §§ 404.1563(c), 416.963(c).

[3] The Law Judge referenced the vocational expert's (VE) opinion that a person with plaintiff's RFC could perform work as a telephone operator, a cashier, and a production inspector. (R. 22, 383-384.)

2

the final decision of the Commissioner. This action ensued.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan,* 907 F.2d 1453 (4th Cir.1990); *Shively v. Heckler,* 739 F.2d 987 (4th Cir. 1984). The Regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence which the court is to review for clear error or lack of substantial evidentiary support. 20 C.F.R. §§ 404.1527 and 416.927; *Craig v. Chater,* 76 F.3d 585 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze,* 368 F.2d 640 (4th Cir.1966).

In a brief filed in support of her motion for summary judgment, plaintiff initially argues that the Law Judge erred in finding she had a "history of" recurring depression because a "history" cannot be an impairment under the Regulations. (Pl's Brief, pp. 15-16.) Pointing out that a history shows the presence of an impairment, she contends that the court should "assume" that the Law Judge found her depression was a severe impairment[4], and that substantial evidence supports a finding that her depression constitutes a severe impairment. (*Id.*)

A "severe impairment" is one or a combination of impairments that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). There is a "duration requirement" which requires that unless an impairment is

---

[4] Initially, plaintiff appears to be arguing that the Law Judge's finding that she had a "history of" Crohn's disease was also at issue. (Pl's Brief, p. 15.) However, based on the remainder of her brief and her Reply, it appears that she is arguing only that the finding she had a "history of depression" equates to a finding that her depression is a severe impairment, which she believes is supported by substantial evidence.

3

expected to result in death, it must have lasted or be expected to last for a continuous period of no less than twelve months. 20 C.F.R. §§ 404.1509, 416.909.

For numerous reasons, the Law Judge determined that plaintiff's major depression was not a severe impairment. (R. 18.) Among those reasons was that her depression did not meet the Act's twelve-month durational requirement. (*Id.*) The undersigned believes the Law Judge's determination that plaintiff's depression did not last and was not expected to last for a continuous period of no less than twelve months is supported by substantial evidence.

Plaintiff believes her claim of severe depression is well-documented, and she has referenced medical records dated November 21, 2004, November 24, 2004, December 28, 2004, January 20, 2005, April 28, 2005, and July 18, 2005. (Pl's Brief, pp. 15-16.) Even if continuous for the dates offered, this time span covers only about eight months. Moreover, the only place plaintiff received any ongoing mental health treatment during the relevant time period was at Piedmont Community Services between December 28, 2004 through April 4, 2005. (R. 267-273.) There is nothing else in the record establishing that plaintiff's depression lasted or was expected to last for a continuous period of no less than twelve months. Thus, the Law Judge's finding that plaintiff's depression was not a severe impairment has substantial evidentiary support.

Plaintiff also argues that the Law Judge did not properly evaluate her depression. (Pl's Brief, pp. 16-18.) Specifically, she argues that the Law Judge failed to give proper weight to the opinions offered by consultative examiner Blanche Williams, Ph.D. (*Id.*) Plaintiff believes the Law Judge substituted his own lay opinion for that of Dr. Williams, which she argues was based on psychological testing. (Pl's Brief, p. 18.) Moreover, plaintiff contends that the Law Judge

4

rejected Dr. Williams' assessment because it was obtained to assist with plaintiff's claim for disability benefits. (Pl's Brief, pp. 19-20.) At the same time, plaintiff challenges the controlling weight the Law Judge gave to the evidence from Donald S. Tessmann, M.D. who she argues treated her on only one occasion. (Pl's Brief, p. 18.) In all this, plaintiff contends that the Law Judge's assessment and findings relating to her depression are contradictory and not supported by substantial evidence. (Pl's Brief, pp. 18-19.)

Under the Regulations and applicable circuit decisional authority, a Law Judge and the Commissioner must consider the following in evaluating and weighing medical opinions: "'(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.'" *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005)).

In making the finding that plaintiff's depression was not severe, the Law Judge discounted Dr. Williams' opinion that plaintiff suffered severe and disabling depression for the following reasons: First, he noted that Dr. Tessmann, a psychiatrist, found that plaintiff's depression produced only mild limitations, and that she responded well to the Wellbutrin XL he prescribed. (R. 18.) Next, he noted that Dr. Tessmann's findings were based on information gleaned from the treatment plaintiff had received over a period of time at Piedmont Community Services, as opposed to the information Dr. Williams provided after a single consultative evaluation. (*Id.*) The Law Judge also noted that after being seen at Piedmont Community Services plaintiff received no further significant mental health treatment. (*Id.*) Finally, he

5

concluded that even if her depression could be viewed as severe, it had responded well to treatment and did not meet the Act's twelve-month durational requirement. (*Id.*)

The record reveals that the *only* longitudinal view of plaintiff's depression is found in the records from Piedmont Community Services.[5] (R. 267-273.) There, plaintiff was treated by William Brown, a staff member of Piedmont Community Services, and Dr. Tessmann, a psychiatrist. On December 28, 2004, Brown conducted a very extensive initial assessment addressing plaintiff's social, physical and mental backgrounds. (R. 272-273.) At her next visit, on January 20, 2005, plaintiff was seen by Dr. Tessmann who also conducted an extensive psychiatric evaluation and diagnosed plaintiff as suffering with major depression and exhibiting a Global Assessment of Functioning ("GAF") of 65[6]. (R. 270-271.) Dr. Tessmann prescribed a thirty-day supply of Wellbutrin XL. (R. 271.) On February 21, 2005, plaintiff was seen by both Brown and Dr. Tessmann. (R. 268-269.) Brown assessed plaintiff's need for therapy, and Dr. Tessmann evaluated the impact of the Wellbutrin XL on her depression. (*Id.*) Dr. Tessmann found that plaintiff's appearance, behavior, orientation, speech, mood, range of affect, thought process, thought content, and perception *all were within normal limits*. (R. 268.) The psychiatrist also found that her response to the Wellbutrin XL was *very positive*, her overall

---

[5]Dr. Tessmann is the Medical Director at Piedmont Community Services, which was the only facility where plaintiff received any ongoing mental health treatment. In a real sense, Dr. Tessmann was the "treating physician" in charge at the facility. If it were erroneous for the Law Judge to have referred to him as a treating source, such error is harmless.

[6]The GAF ranks psychological, social, and occupational functioning on a hypothetical continuum of mental illness ranging from zero to 100. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed 2000) ( *DSM-IV* ). A GAF score in the range of 61-70 indicates some *mild* symptoms or some difficulty in social, occupational, or school functioning, but that the individual is *generally functioning pretty well* and has some meaningful interpersonal relationships. *Id.* at 34 (emphases added).

clinical condition was improved, and she was doing so well that she did not need to return to see him for three months. (*Id.*) Plaintiff's final treatment at Piedmont Community Services occurred on April 4, 2005. (R. 267.)

At the request of plaintiff's counsel, Dr. Williams, a licensed clinical psychologist, evaluated plaintiff on July 18, 2005. (R. 326-334.) The psychologist found that all aspects of her ability to make occupational and performance adjustments were poor[7], and that her ability to maintain her personal appearance was fair.[8] (R. 326-327.) The psychologist determined that plaintiff exhibited depression so severe that she could not sustain concentration to perform even simple, repetitive tasks on a consistent basis; she could not maintain regular work attendance consistently without interruption from her symptoms; she could not work well with supervisors, coworkers, or the public because of chronic interference from her symptoms; and she could not handle the usual stressors encountered in competitive work. (R. 334.) Finally, Dr. Williams diagnosed plaintiff with dysthymmic disorder, major depression, severe and found her GAF to be 48[9]. (*Id.*)

After reviewing the record as a whole, the undersigned cannot say that the Law Judge erred in according controlling weight to the opinions offered by Dr. Tessmann and discounting those offered by Dr. Williams. Contrary to plaintiff's assertion, Dr. Tessmann evaluated plaintiff

---

[7]In this evaluation, the term "poor" is defined as seriously limited but not precluded. (R. 326.)

[8]The undersigned finds this specific finding of interest because Dr. William's assessment also provides that plaintiff was "neatly, cleanly, and casually dressed. Her blond hair was neatly styled." (R. 328.)

[9]A GAF score in the range of 41-50 reflects serious symptoms or any serious impairment in social, occupational, or school functioning. Am. Psychiatric Ass'n, *supra* note 6, at 34.

7

on two occasions, namely January 20, 2005 and February 21, 2005. (R. 268, 270-271.) Also, Dr. Tessmann, as the Medical Director at Piedmont Community Services, had the benefit of records provided by the staff, including Brown, who also is a mental health professional at Piedmont Community Services. Like Dr. Williams, Dr. Tessmann evaluated and diagnosed plaintiff. However, Dr. Tessmann evaluated plaintiff on more than one occasion, chose a course of treatment, performed a subsequent assessment to determine the effectiveness of the treatment, and participated in the final decision that plaintiff's course of treatment had been effective enough not to warrant a return for three months. (R. 268.)

The Law Judge also was entitled to assign more weight to the evidence offered through Dr. Tessmann on his credentials alone. He is a psychiatrist and Medical Director of a community-based center, whereas Dr. Williams is a clinical psychologist.[10] Equally important, Dr. William's opinion that plaintiff's depression was both severe and disabling stands apart from and conflicts with the other evidence in the extant record concerning her mental status, and there is no suggestion that Dr. Williams was privy to information from plaintiff's visits to Piedmont Community Services. The Law Judge did not err in according more weight to the opinions offered by Dr. Tessmann than to those offered by Dr. Williams.

Next, plaintiff argues that the hypothetical question posed to the VE was inadequate. (Pl's Brief, pp. 20-21.) Specifically, plaintiff contends that, although the Law Judge found she suffered degenerative disc disease of the sacrolumbar spine, depression, and Crohn's disease, the exertional and non-exertional limitations implicit in such a finding were not included in the hypothetical presented to the VE. (*Id.*) Plaintiff does not believe this comports with Fourth

---

[10]As a clinical psychologist, Dr. Williams lacks the ability to prescribe medication.

8

Circuit authority rendering a VE's opinion relevant only where it accounts for the vocational effects of all a claimant's impairments which are shown by the substantial evidence in the case.[11] (*Id.*)

Interestingly, plaintiff has failed to specify *what* limitations she experiences as a result of her degenerative disc disease, depression, and Crohn's disease that were not taken into account in the Law Judge's hypothetical examination of the VE. Instead, she simply makes a general assertion that there are exertional and non-exertional limitations implicit in those impairments. (Pl's Brief, pp. 20-21.) The undersigned does not believe the court is at liberty on its own to first determine the nature and scope of any limitation and then to say, in hindsight, that it should have been included for consideration by the VE.

The Law Judge specifically determined that plaintiff retained the RFC to perform sedentary work which involved only occasional postural activities, including climbing, balancing, stooping, kneeling, crouching and crawling. (R. 18.) The hypothetical question posed to the VE was that of a person of plaintiff's age and educational level with such an RFC. (R. 383.) The question also accounted for any limitations imposed by plaintiff's degenerative disc disease by suggesting she was capable of performing only a limited range of sedentary work. In that regard, the undersigned notes that plaintiff's claim that her degenerative disc disease produces disabling limitations is not supported by the record. The record shows she was *not taking any pain medication* on the following dates during the relevant time period: August 1, 2001, August 7, 2001, December 31, 2001, January 20, 2002, January 21, 2002, April 2, 2002,

---

[11] *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005); *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).

9

July 18, 2002, January 7, 2003, April 8, 2003, April 11, 2003, April 24, 2003, July 8, 2003, April 7, 2004, August 23, 2004, and November 21, 2004. (R. 167, 168, 170, 173, 176, 179, 191, 198, 209, 213, 215, 220, 237, 243, 245, 251, 257, 262, 296.)

Moreover, the evidence from the UVA Pain Management Clinic support the Law Judge's finding that plaintiff was capable of performing a limited range of sedentary work, notwithstanding her degenerative disc disease. On November 24, 2004, Robert B. Goldstein, M.D. reported that plaintiff significantly magnified her pain complaints, that her alleged level of pain was clearly out of proportion to her pathology, and that, although her MRI revealed some degenerative changes in the lower lumbar region with some facet arthropathy, it was clearly not enough to cause the magnitude of symptoms she alleged. (R. 283.)

The court acknowledges that, when plaintiff's counsel asked the VE to account for the limitations presented by Dr. Williams' in her July 18, 2005 evaluation, the VE testified that all employment would be precluded. (R. 386-387.) As previously noted, however, the Law Judge did not err when he discounted Dr. Williams' opinion. Therefore, he did not err by failing to include Dr. Williams' limitations in the questions posed to the VE.[12]

The record also reveals that plaintiff has received no recent treatment for her Crohn's disease, and she had not taken medication for the condition for two years prior to December 28, 2004. (R. 269, 272.) Thus, there was nothing on this front for the VE to have considered in rendering his vocational assessment at the hearing. In the end, the undersigned cannot find that the examination of the VE was inadequate under the *Walker v. Bowen* standard.

---

[12]Counsel's examination of the VE afforded him an opportunity to address any limitations, whether implicit or explicit, or whether contained in Dr. Williams' opinion, counsel thought could impair plaintiff's ability to perform any job the VE had identified.

10

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

June 26, 2008
Date

11